United States District Court
Southern District of Texas
**ENTERED**
March 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2425 |
| | § | |
| MACKZILLA, LLC, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants' motion to dismiss for lack of personal jurisdiction (Dkt. 9). Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

Plaintiff General Electric Capital Corporation ("GE Capital") is a Delaware corporation that provides financing to certain businesses pursuant to loan agreements. Dkt. 1 at 1, 2–6. Defendant Vaczilla Trucking, LLC ("Vaczilla") is a North Dakota limited liability company that provides transportation services to the oil and gas industry. Dkt. 1 at 2; Dkt. 10, Ex. A-1. Defendant Mackzilla, LLC ("Mackzilla") is a Louisiana limited liability company that provides the same services. Dkt. 1 at 1; Dkt. 10, Ex. A-1. Defendants Dominick Ditcharo and Crystal Ditcharo are Louisiana citizens and are the sole members of Vaczilla and Mackzilla. Dkt. 1 at 1–2.

Between October of 2011 and October of 2012, GE Capital entered into six loan agreements with Vaczilla and agreed to finance Vaczilla's purchase of various tractors and trailers for use in its business. *Id.* at 2–4; *see also* Dkt. 1, Exs. A–F. Between July of 2012 and August of 2012, GE Capital entered into five similar loan agreements with Mackzilla. Dkt. 1 at 4–6; Dkt. 1, Exs. G–K.

Under the loan agreements, Vaczilla and Mackzilla (collectively, "Borrowers") agreed to make periodic payments to GE Capital. Dkt. 1 at 7. Borrowers also granted GE Capital security interests in the tractors and trailers as collateral for the loan agreements. *Id.* Some of the loan agreements contain forum selection clauses, while others are silent regarding where disputes should be resolved. The first three loan agreements between GE Capital and Vaczilla do not contain forum selection clauses. Dkt. 10 at 6; *see* Dkt. 1, Exs. A–C. The remaining three loan agreements between GE Capital and Vaczilla and the five loan agreements between GE Capital and Mackzilla contain the following forum selection clause:

> Anything in this Agreement to the contrary notwithstanding, the transaction contemplated by this Agreement shall be deemed approved and entered into within the State of Texas and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Texas (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in the State of Texas, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; provided, however, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

Dkt. 1, Exs. D–K § 7.6.

On October 3, 2012, Dominick Ditcharo entered into a continuing guaranty, whereby he agreed to discharge Vaczilla's "liabilities, obligations, and indebtedness to GE Capital." Dkt. 1,

2

Ex. M at 2–3.  On February 28, 2013, Crystal Ditcharo entered into a similar continuing guaranty. *Id.* at 4.  Under the continuing guaranties, Dominick Ditcharo and Crystal Ditcharo (collectively, "Guarantors") agreed that

> one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of GE Capital, with or without joinder of [Vaczilla] or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever which [Vaczilla] may have against GE Capital, other than full payment of the indebtedness; and such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding, or litigation is commenced.

*Id.* at 2, 4.  Guarantors also agreed that "GE Capital may bring any legal proceeding it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which GE Capital's office administering the indebtedness is located." *Id.*  The parties have not indicated whether any similar guaranties were executed with respect to the Mackzilla transactions.

In early 2015, Borrowers stopped making payments under all of the loan agreements.  Dkt. 1 at 8.  Under the continuing guaranties, Borrowers' default under the loan agreements is considered a default of the Guarantors.  *Id.*  GE Capital notified Borrowers and Guarantors (collectively, "Defendants") of their defaults and demanded that the defaults be cured.  *Id.* at 9.  Pursuant to the loan agreements, GE Capital accelerated the entire amount due.  *Id.* at 8.  On July 24, 2015, GE Capital sent a letter to Defendants, demanding payment of the accelerated amount due under the loan agreements and/or surrender of the collateral.  *Id.* at 9.  GE Capital subsequently repossessed part of the collateral; however, it was unable to recover five of the vehicles.  *Id.*  Defendants have refused to pay the amount due under the loan agreements or return the remaining collateral.  *Id.*

On August 13, 2015, Defendants filed suit in Louisiana state court, claiming that the loan agreements should be rescinded because they were procured by fraud.  Dkt. 10 at 9; Dkt. 10, Ex. A-1.

The Louisiana court dismissed Defendants' claims relating to the loan agreements containing Texas forum selection clauses but retained the claims relating to the loan agreements without forum selection clauses. Dkt. 12 at 9; Dkt. 13 at 1.

On August 21, 2015, GE Capital filed this lawsuit, raising claims for injunctive relief, special performance, breach of contract, and breach of guaranty, and asking the court to issue a writ of sequestration in its favor. Dkt. 1 at 10–15. On September 21, 2015, Defendants filed the pending motion to dismiss for lack of personal jurisdiction. Dkt. 9.

## II. LEGAL STANDARD AND ANALYSIS

Defendants move to dismiss this lawsuit for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *Id.*; *see* Fed. R. Civ. P. 12(b)(2). Defendants contend that they have insufficient contacts with Texas to support personal jurisdiction and that there are no contractual provisions that validly confer jurisdiction. Dkt. 10 at 2–3. The court will address Defendants' arguments with respect to Borrowers and Guarantors separately.

**A.  Personal Jurisdiction over Borrowers**

Defendants note that the first three loan agreements between GE Capital and Vaczilla do not contain forum selection clauses and argue that, at a minimum, any claims related to those transactions must be dismissed. *Id.* at 6. Further, Defendants contend that the forum selection clauses in the remaining loan agreements are unenforceable. *Id.* at 8.

**1.  Loan Agreements with Forum Selection Clauses**

The final three loan agreements between GE Capital and Vaczilla and all five loan agreements between GE Capital and Mackzilla contain forum selection clauses indicating that any legal action must be brought in the state or federal courts of Texas or in a state where the collateral is located. *See* Dkt. 1, Exs. D–K § 7.6. Defendants argue that these forum selection clauses are

4

unenforceable because they are unreasonable. Dkt. 10 at 8. Defendants note that they have already filed a lawsuit in Louisiana state court seeking to have the loan agreements rescinded because the agreements were procured by fraud. *Id.* at 9. Defendants contend that any documents or witnesses relevant to the transactions reflected in these loan agreements will be found in Louisiana. *Id.* at 9. Therefore, Defendants argue that it would be fundamentally unfair to require them to litigate those claims here. *Id.* at 9–10. In response, GE Capital argues that the forum selection clauses are valid and Defendants have waived any objection to personal jurisdiction in Texas. Dkt. 12 at 9–10. GE Capital asserts that Defendants have not met the heavy burden of showing that enforcement of the forum selection clauses would be unjust. *Id.* at 11. Further, GE Capital notes that Defendants have alleged only that the loan agreements as a whole were procured by fraud but have made no specific allegations that the incorporation of the forum selection clauses was the product of fraud. *Id.* at 12.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant typically bears the burden of proof. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982) (citation omitted). However, "the personal jurisdiction requirement is a waivable right," and "there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174 (1985) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S. Ct. 2099 (1982)) (internal quotation marks omitted). "[P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* Enforcement of a valid forum selection clause does not offend due process. *Id.* "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 190 (1972)). Thus, where a

forum selection clause applies, the party resisting enforcement of the clause bears the "heavy burden" of proving that enforcement would be unreasonable. *M/S Bremen*, 407 U.S. at 17. The party may satisfy its heavy burden of proof by establishing that

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching;
> (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum;
> (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or
> (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522 (1991); *M/S Bremen*, 407 U.S. at 17). Defendants have presented arguments under (1) and (2).

### i.  Fraud

Defendants argue that the loan agreements were "procured by fraud" and note that they have filed a lawsuit in Louisiana state court to have the agreements rescinded on this basis. Dkt. 10 at 9. The court doubts that bare allegations in a complaint are sufficient to satisfy Defendants' heavy burden of proof. More importantly, however, Defendants have not even alleged that the forum selection clauses themselves were procured by fraud; rather, their allegations relate to the loan agreements as a whole. Case law in this area clearly establishes that a party resisting enforcement of a forum selection clause must prove that the clause itself was the product of fraud: allegations relating to the contract as a whole are inapposite. *See Haynsworth*, 121 F.3d at 963 ("Fraud and overreaching must be specific to a forum selection clause in order to invalidate it . . . Thus, allegations of such conduct as to the contract as a whole—or portions of it other than the [forum selection] clause—are insufficient; the claims of fraud or overreaching must be aimed straight at the

6

[forum selection] clause in order to succeed."); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14, 94 S. Ct. 2449 (1974) (explaining that the fraud exception to enforcement of a forum selection clause "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"). Having made no allegations that the forum selection clauses were the product of fraud, Defendants cannot avoid enforcement of the clauses on this basis.

## ii.   Grave Inconvenience

Defendants have also argued that they would be effectively deprived of their day in court if forced to litigate here, noting that litigation in this forum would present a financial hardship and that the relevant witnesses and evidence are in Louisiana. Dkt. 10 at 8–9. While it may be expensive for Defendants to litigate these claims here, this result is exactly what they bargained for under the loan agreements when they agreed to the forum selection clauses. *See Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 617 (5th Cir. 2007) (rejecting the argument that the forum selection clause was unreasonable merely because "it would be very expensive and take a long time to bring suit" in the required forum). Defendants accepted the risk that relevant witnesses and evidence would not be easily accessible from the Texas forum. *See Rimkus Consulting Grp., Inc. v. Rault Res., Inc.*, No. CIV.A. H-07-1494, 2008 WL 901483, at *6 (S.D. Tex. Mar. 31, 2008) (Rosenthal, J.) ("The other facts that the defendants identify, including their own location, the location of the services performed, and the location of witnesses, may show that Louisiana is a more convenient forum than Texas. These facts do not show that enforcing the forum-selection clause would be so gravely inconvenient or unfair that the defendants would effectively be deprived of their day in court."); *see also Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir.

1992) (enforcing a forum selection clause requiring that lawsuits be brought in Germany, despite plaintiff's argument "that it would be nearly impossible to proceed with its suit in Germany because the witnesses and physical evidence are located in Illinois").  Presumably, Defendants considered the loan agreements to be sufficiently advantageous to accept the cost and inconvenience of litigating any potential claims in Texas.  *See Paper Exp.*, 972 F.2d at 758 (explaining that "additional expense does not necessarily invalidate a forum-selection clause since [plaintiff] was presumably compensated for this burden by way of the consideration it received under the contract").  Defendants cannot complain now that the forum selection clauses have been invoked against them. *See Lafargue v. Union Pac. R.R.*, 154 F. Supp. 2d 1001, 1006 (S.D. Tex. 2001) (Kent, J.) (finding that the defendant "implicitly agreed to shoulder the costs" of pursuing claims in the forum prescribed by the forum selection clause and explaining that "[a]bsent extraordinary circumstances . . . [the defendant] cannot now avoid its agreement by complaining that it made too costly a deal").  Further, Defendants cannot be surprised by the prospect of litigating claims in a Texas court, given that they agreed to a Texas forum selection clause in eight different contracts. *See Rimkus*, 2008 WL 901483, at *6 (emphasizing that defendants "received a copy of the terms and conditions on five separate occasions, never objected to the terms, and continued to enter into agreements with [the plaintiff]").  The court finds that Defendants have not met their heavy burden to rebut the presumptive validity of the forum selection clauses.  Therefore, the court has personal jurisdiction over Borrowers with respect to the claims under the loan agreements with forum selection clauses.

### 2. Loan Agreements Without Forum Selection Clauses

The first three loan agreements between GE Capital and Vaczilla do not contain forum selection clauses.  Dkt. 10 at 6.  Defendants argue that the claims related to these agreements must

be dismissed because there is no connection between the claims and Texas, and there are no forum selection clauses to otherwise confer jurisdiction. *Id.* at 4–6. GE Capital argues that Defendants made shipments and transported goods within Texas and claims that an item of remaining collateral is located in San Antonio, Texas. Dkt. 12 at 15–17. Defendants dispute these alleged contacts and maintain that, even if proven, these contacts would be insufficient to support personal jurisdiction. Dkt. 13 at 4.

The court need not resolve the parties' arguments regarding the connection between these claims and Texas. The court finds that, even assuming there is no independent basis for personal jurisdiction over these claims, the exercise of personal jurisdiction is nonetheless proper because these claims share a factual basis with the claims under the loan agreements with forum selection clauses. As GE Capital has pointed out, where a court has personal jurisdiction over only some claims in a case, the court may extend its exercise of personal jurisdiction to other claims that arise out of the same "nucleus of operative fact." Dkt. 12 at 12.

Under the doctrine of pendent personal jurisdiction, where "a court possesses personal jurisdiction over a defendant for one claim, [but] lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact," the court may choose to assert personal jurisdiction over the second claim. *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002)). "In essence, once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Id.* (internal quotation marks omitted). The decision to exercise pendent personal jurisdiction is discretionary with the court. *Id.* at 784. Although the Fifth Circuit

9

has not yet addressed pendent personal jurisdiction, this district and every circuit to decide the issue have approved the doctrine. *See id.* at 783 (collecting cases).

Pendent personal jurisdiction is typically employed in cases where the court has personal jurisdiction over a federal claim but lacks personal jurisdiction over related state law claims. *See, e.g.*, *Soto v. Vanderbilt Mortg. & Fin., Inc.*, No. CIV.A. C-10-66, 2010 WL 1790177, at *5–7 (S.D. Tex. May 3, 2010) (Jack, J.) (finding personal jurisdiction over plaintiffs' RICO claims and exercising pendent personal jurisdiction over plaintiffs' related state law claims); *Team Healthcare/Diagnostic Corp. v. Aetna Life Ins. Co.*, No. CIV.A.3:07-CV-0214-O, 2008 WL 483366, at *7 (N.D. Tex. Feb. 22, 2008) (finding personal jurisdiction over plaintiff's ERISA claims and exercising pendent personal jurisdiction over plaintiff's related state law claims). In these circumstances, the justification for the use of pendent personal jurisdiction is that a "defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance." *Rolls-Royce*, 576 F. Supp. 2d at 783 (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002)).

Although pendent personal jurisdiction is most frequently employed in federal question cases where the plaintiff raises a combination of federal and state law claims, courts have also employed the doctrine in diversity cases involving purely state law claims. In *Pension Advisory Group, Ltd. v. Country Life Insurance Co.*, plaintiffs contacted defendants Country Life Insurance and its vice president Dale Hall to determine if Country Life would be interested in developing a group long-term disability insurance product. 771 F. Supp. 2d 680, 689–90 (S.D. Tex. 2011) (Jack, J.). In the process of developing the product, questions arose about the ownership of the product. *Id.* at 690.

A lawsuit followed in which plaintiffs sued for breach of contract, theft of trade secrets and confidential information, unfair competition, libel and business disparagement, theft, and tortious interference with prospective relations. *Id.* at 697. Defendant Hall moved to dismiss for lack of personal jurisdiction. *Id.* at 692. The court found that it had personal jurisdiction over plaintiffs' claims for theft of trade secrets, unfair competition, theft, and tortious interference with prospective relations. *Id.* at 695. The court asserted pendent personal jurisdiction over plaintiffs' remaining claims, explaining that all of the causes of action "involve the same nucleus of operative fact, namely a course of dealing between plaintiffs and Hall, over a period of several years, beginning with the first interactions between the parties. All causes of action are closely related." *Id.* at 696.

Similarly, in *Rice v. Nova Biomedical Corp.*, plaintiff Dale Rice worked for defendant Nova Biomedical Corporation, where he was supervised by defendant Robert Christopher. 763 F. Supp. 961, 962 (N.D. Ill. 1991), *aff'd*, 38 F.3d 909 (7th Cir. 1994). Rice was injured on the job and notified Nova that he intended to file a worker's compensation claim. *Id.* Christopher then gave Rice a warning notice for alleged unsatisfactory job performance. *Id.* at 963. Rice filed his worker's compensation claim and was later fired without explanation. *Id.* Rice brought suit against Nova and Christopher, raising claims for retaliatory discharge, defamation, and intentional interference with an employment relationship. *Id.* at 962. Christopher moved to dismiss for lack of personal jurisdiction. *Id.* The court found that it had personal jurisdiction over the intentional interference claim but not the retaliatory discharge or defamation claims. *Id.* at 964–66. However, the court exercised pendent personal jurisdiction over the retaliatory discharge and defamation claims, explaining that those claims were "substantially interrelated" with the intentional interference claim. *Id.* at 966. The court reasoned that "from the standpoint of fundamental fairness as to contacts with and convenience of the forum, Christopher loses nothing by being subject to our judgment on the

other two counts." *Id.* The court recognized that "[p]endent personal jurisdiction typically is invoked in cases where the exclusive basis for personal jurisdiction is the presence of a federal claim that provides for extra-territorial service of process." *Id.* However, the court concluded that the reasoning supporting pendent personal jurisdiction applied with "equal, or perhaps even greater, force" in the case before the court because "since subject matter jurisdiction over each of the counts is based on diversity, we do not face the additional and more abstract problem . . . as to the propriety of exercising pendent subject matter jurisdiction, particularly over claims as to which personal jurisdiction is also lacking." *Id.*

The court agrees with the *Rice* court that the use of pendent personal jurisdiction may be equally or even more justified in some diversity cases than in federal question cases with a mix of federal and state law claims. Even when federal and state law claims are factually related, the parties must bear the burden of litigating claims that require reference to distinct sets of laws. By contrast, in this case, the claims with and without personal jurisdiction are legally identical. In other words, GE Capital has raised the same claims under the loan agreements with forum selection clauses and the loan agreements without forum selection clauses. It is unlikely, for example, that Defendants would be severely inconvenienced by defending against GE Capital's breach of contract claims with respect to the three loan agreements without forum selection clauses when Defendants are already defending against GE Capital's identical breach of contract claims with respect to the eight loan agreements with forum selection clauses.

Defendants argue, however, that the claims in this case do not arise from a common nucleus of operative fact because "each loan involved different equipment, a different agreement, and a different amount of money." Dkt. 13 at 3. The court disagrees. All of the claims clearly relate to the same course of dealing: the lender–borrower relationship between GE Capital and Defendants.

The fact that each loan agreement relates to a different vehicle is hardly sufficient to sever the strong relationship between these claims. The court finds that GE Capital's claims under the loan agreements without forum selection clauses and GE Capital's claims under the loan agreements with forum selection clauses arise out of a common nucleus of operative fact. It is both more logical and more efficient for this court to try these claims together. *See Team Healthcare/Diagnostic Corp.*, 2008 WL 483366, at *7 ("[T]rying these issues in a single lawsuit promotes judicial efficiency, is convenient for the parties, and avoids piecemeal litigation."). Although Defendants suggest that all claims could be brought in the Louisiana state court case instead, Defendants also conceded that the Louisiana court dismissed those claims arising under the loan agreements with forum selection clauses. Dkt. 13 at 1, 5. Moreover, it is unclear what claims, if any, GE Capital has brought in the Louisiana case. As a result, it is apparent that the Louisiana court will not be able to hear all of the claims in this case. Therefore, the court will exercise its discretion to extend personal jurisdiction over all claims against Borrowers.

**B.     Personal Jurisdiction over Guarantors**

Defendants also challenge whether the language in the continuing guaranties is sufficient to confer personal jurisdiction over Guarantors. Dkt. 10 at 6–8. Defendants argue that the clause in the continuing guaranties which allows GE Capital to bring legal proceedings in "any court in the State in which GE Capital's office administering the indebtedness is located" is vague, ambiguous, and unenforceable. *Id.* Defendants note that the continuing guaranties do not state where the indebtedness would be administered. *Id.* at 7. Further, Defendants did not send any payments to a Texas address. *Id.* Therefore, Defendants argue that there would be no basis for Guarantors to anticipate being sued in Texas. *Id.* Defendants also contend that this clause "allows Plaintiff to

manipulate the 'consent' of the Defendants by switching the office 'administering the indebtedness.'" *Id.*

GE Capital represents that the offices administering the indebtedness for these contracts are located in Texas and Iowa; therefore, the continuing guaranties permit suit in Texas and Iowa. Dkt. 12 at 13. Further, GE Capital notes that Guarantors agreed under the continuing guaranties to "not seek a change of venue from any jurisdiction or court in which any action, proceeding, or litigation is commenced." *Id.* GE Capital also emphasizes that Guarantors expressly agreed to discharge Borrowers' obligations to GE Capital and contends that Borrowers' agreement to adjudicate all claims in Texas is one such obligation. *Id.* Further, GE Capital argues that the continuing guaranties must be interpreted in the context of the related loan agreements because the guaranties were executed as part of the same transaction. *Id.* 13–14. Given that many of the loan agreements contain Texas forum selection clauses, GE Capital asserts that Guarantors were aware—both in their individual capacity and in their capacity as principals of the Borrowers—that Texas law would apply and that any dispute would be adjudicated in Texas. *Id.* at 14.

In reply, Defendants note that GE Capital contends that the debt was administered in Texas and Iowa, yet the forum selection clauses in the loan agreements permit suit only in Texas. Dkt. 13 at 3. Therefore, Defendants argue that the clause in the continuing guaranties is rendered meaningless when read alongside the forum selection clauses in the loan agreements. *Id.*

The court disagrees with Defendants' position that the clause in the continuing guaranties is rendered meaningless when read in conjunction with the loan agreements. Pursuant to the loan agreements, Borrowers may be sued in Texas. Under the continuing guaranties, Guarantors may be sued in Texas or Iowa. From a practical standpoint, it appears that GE Capital would be required to bring a lawsuit in Texas when naming both Borrowers and Guarantors as defendants because

14

Borrowers cannot be sued in Iowa. However, because there is an "office administering the indebtedness" in Texas, this result falls squarely within the meaning of the clause. Moreover, the continuing guaranties expressly contemplate GE Capital bringing suit against Guarantors individually without joining Vaczilla. *See* Dkt. 1, Ex. M at 2, 4 ("[O]ne or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of GE Capital, with or without joinder of [Vaczilla] or any of the other Guarantors as parties . . . ."). Therefore, GE Capital could bring suit against Guarantors individually in either Texas or Iowa. This result gives full effect to the clause in the continuing guaranties.

Although the court recognizes that a clause providing for jurisdiction where the "office administering the indebtedness is located" may be subject to manipulation, Defendants have presented no evidence that GE Capital has changed the office administering the indebtedness in an attempt to manufacture jurisdiction. GE Capital has provided affidavit testimony that its offices in Iowa and Texas have been responsible for servicing Defendants' account, and there is no evidence that any other offices previously serviced Defendants' account. Dkt 12, Ex. 1 at 1. Although Defendants protest that they never interacted with an office in Texas, the court is required to credit the statement in GE Capital's affidavit at this stage of the litigation. Dkt. 13 at 2; *see Wyatt*, 686 F.2d at 280 ("Conflicts between the affidavits submitted on the question of personal jurisdiction are thus resolved in favor of the plaintiff."). The court will not invalidate a clause in a contract based on a hypothetical possibility of manipulation. *See Initiatives Healthcare, Inc. v. DivLend Equip. Leasing,* LLC, No. 07-12-00480-CV, 2013 WL 9541476, at *5 (Tex. App.—Amarillo Oct. 31, 2013, no pet.) (mem. op.) (rejecting the argument that a "consent-to-jurisdiction clause in the lease agreement is unenforceable as a matter of law because, *of the possibility*, that [plaintiff] *might* select any forum by simply assigning the administration of the lease agreement to an office located in a

particular forum," where defendant had produced no evidence that plaintiff had changed the office administering the lease during the leasing relationship).

Further, the court finds that, in context, Defendants cannot credibly claim that Guarantors had no reason to anticipate suit in Texas. The continuing guaranties provided to the court were signed on October 3, 2012, and February 28, 2013, after all eleven loan agreements had been finalized. Dkt. 1, Ex. M; Dkt. 12, Ex. 1 at 3–4. The explicit purpose of the continuing guaranties was to guarantee performance of the Vaczilla loan agreements, half of which contained Texas forum selection clauses. The collection of contracts between GE Capital, Borrowers, and Guarantors should have given Guarantors sufficient reason to expect that a suit arising out of these transactions would be brought in Texas. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) ("[A]greements executed at the same time, with the same purpose, and as part of the same transaction, are construed together."). This conclusion is bolstered by the fact that defendants Dominick Ditcharo and Crystal Ditcharo are both Guarantors and the sole members of Borrowers. Thus, the Ditcharos were undoubtedly aware of the contents of the loan agreements, which they signed as representatives of Borrowers, and the continuing guaranties, which they signed in their individual capacities as Guarantors. *Cf. Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 & n.19 (5th Cir. 2002) (noting that several courts have found it consistent with due process to impute a corporation's waiver of personal jurisdiction to its individual officers); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (finding that individuals who provided letters of credit as collateral for an underlying agreement were bound by the forum selection clause in the underlying agreement, despite being non-parties to that agreement, because their interests were "completely derivative" of the contracting parties' interests). Therefore, the court finds that

Guarantors waived their objections to personal jurisdiction in Texas and could have reasonably anticipated that a lawsuit would be brought here.

Defendants have raised no valid objection to the court's exercise of personal jurisdiction in this case. Therefore, Defendants' motion to dismiss is DENIED.

### III. CONCLUSION

Defendants' motion to dismiss (Dkt. 9) is DENIED.

Signed at Houston, Texas on March 17, 2016.

_____
Gray H. Miller
United States District Judge